## COMEAUX v. SOUTH COAST CORPORATION. *

### No. 16667.

Court of Appeal of Louisiana. Orleans.

June 14, 1937.

*Decree modified on rehearing 176 So. 142.

Miller, Bloch & Martin, of New Orleans, for appellant.

J. A. Woodville, of New Orleans, for appellee.

JANVIER, Judge.

Mathilda Polidore Comeaux, a colored female agricultural laborer, seeks recovery ex delicto for personal injuries sustained while she was being transported to work in a motortruck on the morning of January 11, 1936. She alleges that the truck belonged to her employer, the Southcoast Corporation, and that it was being operated by an employee of the said employer and that the negligence of the said operator was the sole cause of the accident.

The defendant interposes two alternative defenses. It contends that the nature of its business was hazardous in certain particulars and therefore within the contemplation of Act No. 20 of 1914, as amended, and that plaintiff herself was, by her work, brought into contact with hazardous features of the business, and that, therefore, because of the exclusive coverage of the said act where it is applicable, there can be no recovery except such as is afforded thereby, and that plaintiff, having sued solely in tort, cannot obtain recovery. In the alternative defendant contends that the motortruck in which plaintiff was being transported was not being operated on its behalf, nor by its employee, but by an independent contractor, and that, consequently, even if recovery may be sought in tort, there is no right of recovery against defendant since the negligence complained of, if there was negligence, was attributable solely to an independent contractor.

Defendant maintains that, in any event, plaintiff's injuries were not serious and that no substantial recovery should be allowed.

The matter was tried in the district court before a jury, which rendered a verdict for plaintiff for $3,750, and from a judgment based thereon defendant has appealed.

The contention that the work engaged in was such as to preclude the possibility of recovery other than under the compensation act is presented by exception, and it is, therefore, proper that it be considered first, particularly since the alternative defense depends upon the determination of disputed issues of fact.

Defendant, calling attention to the fact that on the day of the accident all of the sugar cane in the fields had long since been cut, or harvested, and "windrowed," and that plaintiff's labor, had she reached the field, would have involved the lifting of the cane from the "windrows," the stripping of its upper leaves, and the placing of it across the rows in piles so that it might be transported to the mill or factory, where its juice might be extracted and converted into sugar, argues from this that those labors would, therefore, have had no connection with the growing or even with the harvesting of the cane, and therefore would not have been agricultural by nature, but would, rather, have involved the handling of the raw material in its progress through the process of manufacture and would thus have been within the contemplation of the compensation act, which protects the employee of the master engaged in operating a factory, but which does not protect the employee of the master engaged in agriculture.

In Allen v. Smith, 173 U.S. 389, 19 S. Ct. 446, 449, 43 L.Ed. 741, the celebrated case in which was discussed whether "bounty" should be paid to the manufacturer of sugar rather than to the grower of the cane, it was recognized by the Supreme Court that "in the final production of sugar there are two distinct processes involved: (1) The raising of the cane; (2) the manufacture of the sugar from the cane so raised."

Counsel for defendant state that within that part of the process which involves the raising of the cane is contemplated everything from the initial planting operations to and including the cutting of the cane; that when the cane is cut and laid away in "windrows" as a protection against a too early freeze, this first process is completed; and that later, when the cane is taken out of "windrow," in effect, it is being taken out of storage and placed in position to start its journey to and through the mill, it commences the second, or "manufacture" process; and that, therefore, all those employees who are involved in the various stages of this second process are engaged in manufacture and are thus protected and, in fact, exclusively protected by the compensation act.

And there are cases which lend color to this suggestion. Mackey v. Fullerton Naval Stores Co., 4 La.App. 43; Durrett v. Woods, 155 La. 533, 99 So. 430; Dartez v. Sterling Sugars, Inc., 7 La.App. 414. The Dartez Case involved the growing and transporting of sugar cane. Suit was brought in compensation by the parents of an employee engaged as a "teamster" in hauling cane from the field to the field derrick, where it might be loaded on railroad cars. The defendant maintained that it was engaged purely in an agricultural venture, but the court said that "the hauling of cane to the derrick was part of the operation of the factory where the finished product was made, and, therefore, the business was hazardous within the meaning of the Workman's Compensation Act."

The argument here, however, is that the agricultural process had not been completed since the plaintiff had no connection with the removal of the cane from the field and that, in fact, it was not completed until the cane had been raised from the "windrows," stripped of its upper leaves, trimmed of its upper joints, and placed across the "rows" where it might be picked up by others and sent on its way to the "factory." It may be that the Dartez Case should be distinguished from this case on the ground that the cane in this case had not been completely harvested and was not being moved to the factory by the employee with whom we are concerned, whereas, in the Dartez Case, the harvesting process had been completed and the cane was being moved to the factory.

The point is a most interesting one, and we are told that its determination is important in the sugar industry, and counsel for defendant urge us to pass upon it, even though we find in their other contention another and a safer ground upon which to decide the case in favor of defendant. But the point presented by this other contention has, we think, already been settled

by us in a case which has received the approval of the Supreme Court. Crews v. Levitan Smart Shops, Inc. (La.App.) 171 So. 608, 611. We, therefore, prefer to rest our decision on that ground, especially since there is a possibility that the keenness of the satisfaction which will result from an ultimate favorable decision might unnecessarily be dulled by the disappointment which would result from the expression of our views on the first question.

■ This second contention is that the plaintiff was necessarily brought into contact with a motor vehicle and that, therefore, there can be no recovery in tort since the employer, in operating in its business a motor vehicle, and the employee, in riding upon such vehicle, were engaged in an occupation contemplated by the compensation statute, and, therefore, within its exclusive protection. See Crews v. Levitan Smart Shops, Inc., supra; Haddad v. Commercial Motor Truck Co., 146 La. 897, 84 So. 197, 9 A.L.R. 1380; Labostrie v. Weber, 15 La.App. 241, 130 So. 885; Richardson v. Crescent Forwarding & Transp. Co., 17 La.App. 428, 135 So. 688.

Counsel for plaintiff would distinguish this case from the Crews Case on the ground that here the contact with the vehicle was only infrequent—in fact, twice daily—and the work performed in the field had no contact nor connection with the vehicle, whereas Mrs. Crews was, as we stated in that case, "in constant proximity to the gasoline motor which propelled the automobile in which she was transported from place to place by her employer." For reasons which we shall hereafter set forth, we do not consider that there is a distinction.

But we first find it necessary to dispose of the fact that defendant has alleged that the operator of the motortruck—one Melancon—was the owner thereof and operated it as an independent contractor. If Melancon was an independent contractor, then the defendant here—South Coast Company—was not operating the truck in its business and the doctrine of the Crews Case would have no application.

■ But, on the other hand, if he were an independent contractor, then plaintiff's suit for injuries must be against him and she cannot recover in tort against her employer. Therefore, if plaintiff's contention is to be further considered, it is necessary to treat Melancon as an employee of defendant company, since that is the most favorable view possible from the standpoint of plaintiff. We, therefore, treat him as an employee of the South Coast Company and consider that that company employed him as its servant to operate its motortruck and in it to transport its employees to and from their work. If those be the facts, then the conclusion reached by us in Crews v. Levitan Smart Shops, supra, prevents our allowing to plaintiff a recovery in tort, for there we held that an employer who, in the course of his business, makes use of a motor vehicle, is, to that extent, engaged in a hazardous business, and that an employee who, in the course of his master's business, is injured while being transported on such motor vehicle, is within the protection of the compensation laws and, consequently, without the protection of article 2315 of the Civil Code.

The argument that the facts of this case permit of its being distinguished from the Crews Case for the reason that here the employees were merely transported to and from the place at which they were required to work, whereas Mrs. Crews, being a house to house solicitor and being required to ride from house to house in a motor vehicle, actually performed her labors in connection with such vehicle, does not impress us. If that be a distinction, then there was the same distinction between the Crews Case and the case of Tregre v. Kratzer (La. App.) 148 So. 271, for there the employee involved was a farm laborer in a rice field. The laborer was in contact with the motor vehicle only in going to and from labor in the field. Our inability to persuade ourselves of a distinction on that ground was evidenced by our language in the Crews Case to the effect that " * * * we find ourselves unable to agree with the opinion of our brethren of the First Circuit."

Though it is true that Mrs. Crews was required to be more frequently in contact with a motor vehicle than was the plaintiff here, or the plaintiff in the Tregre Case, still the motor vehicle had no actual connection with the work itself other than as a means of transportation by which she (Mrs. Crews) went from one job to the next. It would, we think, be drawing too fine a distinction to hold that an employee is contemplated by the act if he rides from one job to another on a motor vehicle furnished by the employer, and is without the act if he rides in the motor vehicle only to one job, works there all day, and returns home in the evening on the motor

vehicle. The distinction, if made, would be based purely on the extent of the contact with the motor . vehicle, and the act does not make a distinction between the employee brought often into contact with machinery and the employee brought into contact only on infrequent occasions. We find no distinction.

It is unnecessary that we consider the alternative defenses presented by defendant.

It is ordered, adjudged, and decreed that the judgment appealed from be and it is annulled, avoided, and reversed, and that there now be judgment in favor of defendant, dismissing plaintiff's suit at her cost.

Reversed.