### ROBICHAUX v. REALTY OPERATORS, Inc.

### No. 17186.

Court of Appeal of Louisiana. Orleans.
Oct. 16, 1939.

Rehearing Denied Oct. 30, 1939.
Writ of Certiorari Granted Nov. 27, 1939.

Habans & Coleman, of New Orleans, for appellant.

Dart & Dart and H. Grady Price, all of New Orleans, for appellee.

WESTERFIELD, Judge.

This is a suit for workmen's compensation. The plaintiff, Gus Robichaux, appeals from a judgment in favor of his employer, the Realty Operators, Inc.

He alleges in substance that he was employed in September, 1938, as a laborer on the Greenwood Plantation in Terrebonne Parish, which is owned and operated by the defendant; that on or about October 15th, 1938, while piling sugar cane in order that it might be picked up by a portable derrick or "loader" and transported to a sugar mill, owned by defendant, he injured his finger and hand to such an extent that he was obliged to have his finger amputated shortly thereafter; that "his said finger was injured when he was attempting to raise a pile of cane with a cane stick, from which injury the plaintiff's finger became infected resulting in a condition known as osteomyelitis and gangrene"; that the loss of his index finger totally incapacitated him from doing laborious work and that he is unfitted and untrained for any other kind of work. He prays for compensation at the rate of $6.50 per week for four hundred weeks beginning October 15th, 1938.

Defendant answered, admitting that it had employed the plaintiff on September 22nd, 1938, when his duties consisted of planting cane and other farm work at Greenwood Plantation until October 3rd, 1938, when he was exclusively occupied in the cane fields, piling cane into heaps to facilitate its handling by a derrick or cane loader which transferred the cane to trucks which transported it to defendant's Southdown Sugar Factory located on the outskirts of Houma, Louisiana. Defendant avers that plaintiff did not, at any time, do any work near the cane loader or any other machinery and that his duties were such that it was unnecessary for him to be near such machinery; that plaintiff was employed in the piling of cane between October 3rd and 7th and that he did not work for defendant at any time after the latter date; and finally that whatever may have caused the loss of plaintiff's finger it was not the result of an accident and no compensation is due him.

Plaintiff's counsel contends that the business of the defendant—that of operating a sugar refinery—was hazardous in its nature and that plaintiff's duties—that of pil-ing cane in order that it might be removed by a portable derrick—was a necessary and indispensable part of the operation of the defendant's sugar refinery and that, consequently, it owes compensation to an employee accidentally injured in the operation of its refinery regardless of whether such employee was engaged in farming operations or other non-hazardous activities. Mackey v. Fullerton Naval Stores Company, 4 La.App. 43; Durrett v. Woods, 155 La. 533, 99 So. 430; Hecker v. Betz, La.App., 172 So. 816; Wright v. Louisiana Ice & Utilities Company, 14 La.App. 621, 129 So. 436; Crews et ux. v. Levitan Smart Shops, Inc., et al., La.App., 171 So. 608; Labostrie v. Weber, 15 La.App. 241, 130 So. 885; Richardson v. Crescent Forwarding & Transportation Co., Ltd., 17 La.App. 428, 135 So. 688; Tregre et al. v. Kratzer et al., La.App., 148 So. 271; Comeaux v. South Coast Corporation, La.App., 175 So. 177.

Pretermitting a discussion of the law, concerning the interpretation of which we apprehend little difficulty, we will first consider the facts and circumstances surrounding the alleged accidental injury. It appears that in the beginning there was no actual farm labor assigned to Robichaux because the grinding season at the sugar refinery had not begun. He was assigned a house or cabin in which to live and was told that he might cut wood, belonging to his employer, for use by him during the winter. It was the custom to permit employees to cut fire wood for several days before the sugar grinding commenced in order that there might be no interruption of their services during the grinding season. Robichaux cut wood for several days and, on October 3rd, entered upon his duties as a field laborer. He testified that in piling cane he used a long wooden stick about as thick as his wrist, and that on the 7th of October, some of the cane rolled down falling against the stick and that "made me catch the weight on my hand and a cramp caught me in the finger" and "my hand was full of corns from chopping wood" and "my finger got stiff and swoll up." This happened around four o'clock in the afternoon and that evening he called upon Dr. J. T. Prasser of Morgan City, Louisiana. He entered the Charity Hospital at New Orleans on October 15th, 1938, and his finger was amputated, in that institution, on the 31st day of that month. The hospital record, which is in evidence, contains the following:

"About five months ago the patient noticed a small, hard button-like, slightly painful swelling under the skin on the palmar surface of the proximal phalynx of the right index finger. Three weeks ago the finger began to swell and became very painful, red and warm. He soaked it in boric acid solution and after one week the skin spontaneously opened and drained pus. The pain disappeared at this time. The ulceration gradually increased until most of the distal ⅔ of the finger is involved. The finger is much swollen at present but there is no pain.

"Patient had corn (callous) on finger which became infected. For 3-4 months the finger has been swollen, tender and has drained pus. It has been incised several times. Two weeks ago tip of finger got black."

There is a certificate in evidence, signed by Dr. Prasser, to the effect that when he saw Robichaux's hand on the 7th of October, he "thought (it) was an infection, and since it was at night, I applied an antiphlogistic dressing and asked him (to) return next day for closer inspection, but never saw him afterwards".

On the afternoon of October 10th, 1938, plaintiff called on Mr. Toups, the overseer of the Greenwood Plantation, and reported that his hand was hurt and that he wanted money to see a doctor. His finger was then swollen about twice its normal size. In answer to a question by Toups, plaintiff said that he had an abscess on his hand caused by chopping his winter wood. Robichaux had previously told Toups of the presence of the abscess on his hand on Tuesday, October 4th, which was three days before Friday, the 7th, the day on which the alleged accident is said to have occurred. John Narcisse, a fellow workman, who was piling cane with Robichaux, testified that Robichaux told him that he had a little abscess on his hand and that every time "he got to press, he say it hurt him. I told him it is a bad job if he has sore in his hand to press against it".

Section 38 of Act No. 20 of 1914, as amended by Act No. 38 of 1918, reads as follows:

"The word 'Accident,' as used in this act shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event happening, suddenly or violently, with or without human fault, and producing at the time objective symptoms of an injury. The terms 'Injury' and 'Personal Injuries' shall include only injuries by violence to the physical structure of the body and such diseases or infections as naturally result therefrom. The said terms shall in no case be construed to include any other form of disease or derangement, howsoever caused or contracted."

Can it be said that Robichaux suffered an accidental injury within the meaning of this section of the Act? He complained of an abscess on his hand three days before the pile of sugar cane is said to have fallen against the stick and hurt his hand, as he stated to the overseer, Toups, and his fellow-employee, Narcisse. According to the hospital record of October 15th, 1938, Robichaux's hand was swollen and painful for five months before he entered the hospital and it became aggravated three weeks previously when "it spontaneously opened and drained pus". "Patient had corn (callous) on finger which became infected. For 3-4 months the finger had been swollen, tender and has drained pus. It has been incised several times. Two weeks ago tip of finger got black". The only source of information upon which the hospital records could be based was Robichaux himself.

■ We are convinced that there was no accident in the field when Robichaux was piling the sugar cane. Even if the cane stalks fell back against the pole which Robichaux was using the blow could not have been very severe. Moreover, such an occurrence would, it seems to us, be incidental to his occupation and not accidental. If it is conceded that Robichaux's hand was hurt while he was chopping wood, there is no allegation or proof of any accident. If the constant use of the axe produced callouses on his hand, which we understand is not an unusual development with manual laborers, such callouses are of a protective rather than a menacing nature. Osteomyelitis, we are told, is an infection of the bone and may result from a blow which causes a bruise if the wound becomes infected. It does not occur immediately, however, and, according to Dr. Ficklen, who testified as an expert on behalf of defendant, it "usually occurs five or six days after injury". Consequently, giving the plaintiff the benefit of every contention and assuming, but not deciding, that he was employed in a necessary connection with the hazardous business of operating a sugar refinery, and also assuming that his activity in chopping firewood prior to his

having been occupied as a field hand was covered by the compensation law, there is still lacking an essential element in the establishment of plaintiff's case, for it does not appear that he suffered any accidental injury. The best that can be said of the development of the abscess as a result of the chopping of the wood is that it is an occupational disease which is not covered by the compensation statute. Harris v. Southern Carbon Company, La.App., 1935, 162 So. 430.

It results from what has been said that the plaintiff's suit must fall, consequently, and for the reasons assigned the judgment appealed from is affirmed.

Affirmed.